## Kemper et al. v. Asher's Adm'x.

(Decided March 4, 1938.)

HENRY L. BRYANT and J. OWEN REYNOLDS for appellants.

GOLDEN & LAY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Mrs. Kemper from 1927 to 1935, and perhaps later, operated a boarding house in Lexington, Ky., where she catered, in the main, to University students. In her petition filed against Mrs. Mary Saylor, personal representative (and mother) of Letcher Asher, deceased, she alleges that decedent died prior to August, 1935; that he had been a student at the University of Kentucky, and while so had boarded and roomed with her, and agreed to pay her for the services, but that he had wholly failed to pay. She alleges that the total due her was more than $300, but she did not desire to assert claim for more than that amount, which she says was a reasonable charge.

Appellee filed special demurrer and plea in abatement, wherein it was pleaded that appellant was without capacity to sue, since she had in writing assigned her claim to certain of her creditors, naming them, and relied on section 18 of the Civil Code in asking a dismissal of the petition. This plea was not passed on by the court, and later an amended petition (admitting the assignment) was filed, in which the assignees joined, and, adopting the allegations of the original petition, prayed for judgment as had been therein sought. Motion was made to strike the amended petition on the ground that if and when the plea in abatement be sustained, there was naught to amend. This motion the court overruled, and we think properly so, in view of sections 19, 20, and 24 of the Civil Code.

Thereupon, without demurrer to the original or amended petition, appellee answered, denying the allegations of the petition, but presenting no affirmative defensive matter. Thus the issues were formed, the case proceeded to trial, and upon completion of appellant's proof appellee moved the court to direct a verdict, on the ground that there was insufficient proof to submit the claim to the jury. This motion the court sustained; verdict rendered for defendant below and judgment entered. Since the amount involved is only $300, motion for appeal is prayed, and a reversal of the judgment asked.

At the outset of the trial it was stipulated by the parties that proof or nonproof of the original claim filed before the administratrix "is not an issue on this trial, and that the case will be tried solely on its merits,

as shown by the pleadings and proof, and the preliminary filing of said claim is not to prejudice either side.'' We gather from the record that claim was filed with and rejected by appellee. So the only question we are called upon to determine is whether or not the proof adduced by plaintiff below was sufficient to carry the case to the jury.

Martin Wilson and Letcher Asher were from the same county. Wilson went to Lexington to school in 1927; Asher in 1931. It seems that Wilson was interested in getting students for the University; he said, ''I took him and Tate Duff down there with me at the same time,'' and all three of these boys went to Mrs. Kemper's boarding house on Basset court in Lexington, and got ''an attic room.'' ''You could get room and board, and you could get either one.'' Wilson did not know how long Letcher stayed at Mrs. Kemper's. They did stay there one year; Wilson left to go to a fraternity house, but left Duff and Asher occupying the attic room. Asher stayed that year and went back in the fall and stayed there until ''Mrs. Kemper quit running a boarding house in Basset Court.'' After that Mrs. Kemper moved over to Maxwell street; that was some time in 1934. Wilson began working for Mrs. Kemper on January 1, 1934, and Asher came later in the spring and left there to go to camp in the summer of 1935, and in which camp Asher met his death in July or August, 1935.

It was shown that while students boarded with Mrs. Kemper in Basset court her rates for the attic room and board were $20 a month. When Mrs. Kemper moved on to Maxwell place, Asher occupied a pantry just off the kitchen, ''just big enough to get a bed in it.'' For this room and board Mrs. Kemper's charge was $20 a month, and witness says Asher boarded there ''all the time he occupied the room.'' Later, Asher occupied a larger room which had a bed and table in it, but he did not know the monthly rate for this room. Witness says that on Maxwell street he was paying $5 a month for room, but was waiting on the table for his board.

On cross-examination it was shown by witness that Mrs. Kemper sometimes had two or three boys to assist her in washing dishes, waiting table, and in winter one to fire the furnace, in this way partly paying for

their board and lodging; but it is to be observed that it was not shown that Asher was one who at any time had thus wholly or partially paid for his entertainment.

The court based his peremptory instruction on the ground of want of proof of an agreement to pay for the service claimed to have been rendered, or the value. thereof, and without any proof that there had not been payment. Appellee surmises that the claim against decedent's estate is an afterthought, and would never have been filed if decedent had not met his death. Further, that there is no proof that Asher was not one of the working, or partly working, students. It is further asserted that there was no proof as to whether or not Mrs. Kemper intended to charge the guest for entertainment, or, if so, the value thereof, or just what period of time the alleged entertainment covered. We note on this last point there was no plea of limitations nor demurrer to the pleadings.

While it may be said the proof on all the matters urged was not of the most convincing character, it does appear that for a year or more, Asher did receive lodging and board at Mrs. Kemper's boarding house in Basset court. It is sufficiently clear that he received the same from the fall of 1934 and prior to July or August of 1935; this at the Maxwell street place. It is sufficiently apparent that for this entertainment the usual and customary rate was $20 a month, if he was not working his way, which was not shown, and since rendition of services of his board and lodging would have been one method of payment, the burden to show such payment, or payment in cash, rested upon the one contesting the claim.

It cannot be doubted that Mrs. Kemper was in the business of keeping boarders for remuneration and not as an act of charity or hospitality. Her place was, to say the least, a house of ''private entertainment,'' as mentioned in sections 2178 et seq., Kentucky Statutes, enacted in order to protect innkeepers, and those operating boarding houses. By section 2179a-1, one who furnishes entertainment for the traveler is given a lien on his baggage and personal property for the contract price of services rendered, but if there be no contract, then for a reasonable price for board, nursing, care, or attention.

Construing the several innkeeper or boarding house statutes (other than section 2179a-1), we have not infrequently held that there is contract implied in law, and one receiving the services of a boarding house keeper is required, in the absence of a specific agreement as to rates, to pay a reasonable price for the service rendered. If Asher received the services alleged and proven, to the extent indicated, even in the absence of specific agreement as to rates, he should have paid, or his estate pay, a reasonable charge therefor, and the proof shows what the customary rates were.

The cases construing the statutes, supra, and allowing recovery on implied contract for board and lodging and other like services, to which reference may be made, are: Stidham v. O'Neals' Adm'r, 245 Ky. 667, 54 S. W. (2d) 54, 55; Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459, in which latter many applicable opinions are reviewed and a large number cited. In many of these cases the rule is also laid down that the burden of proving payment is on the one contesting the claim. For instance, in the Stidham Case, supra, where section 2178, Kentucky Statutes, was involved and construed, we said:

"There was no evidence that the contract sued on was not made, and if payment had been properly pleaded then there was nothing for the jury to pass on except the reasonable value of the services, and whether or not they had been paid. The burden of proving payment was on the administrator."

After an analysis of the proof we are of the opinion that there was sufficient proof adduced to have justified the court in submitting to the jury the question as to whether or not the appellant had for a period of time indicated, furnished decedent with board and lodging, and what was a reasonable charge for such services rendered.

The appeal is granted; judgment reversed, with directions to grant appellant a new trial consistent herewith.